IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TOBY STANGEL, | CIV. NO. 22-00067 JMS-KJM |
| Petitioner, | ORDER DENYING PETITION UNDER 28 U.S.C. § 2254, ECF NO. 1, AND ISSUING CERTIFICATE OF APPEALABILITY |
| v. | |
| WARDEN SHAWN WEAD, | |
| Respondent. | |

## ORDER DENYING PETITION UNDER 28 U.S.C. § 2254, ECF NO. 1, AND ISSUING CERTIFICATE OF APPEALABILITY

## I. INTRODUCTION

On February 14, 2022, Petitioner Toby Stangel ("Petitioner" or "Stangel"), proceeding pro se,[1] filed a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody." ECF Nos. 1, 1-1.[2] Stangel alleges that his federal constitutional rights were violated during his criminal

---

[1] When Petitioner filed the Petition, he was proceeding pro se. ECF No. 1 at PageID.1. On December 12, 2022, however, attorney Robert J. Christensen entered an appearance on behalf of Petitioner. *See* ECF No. 18.

[2] Although this action was opened on February 17, 2022, the Petition is deemed filed on the date Stangel gave it to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (explaining prison mailbox rule); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001). Here, the Petition is dated February 14, 2022, *see* ECF No. 1 at PageID.15, and the mailing envelope is postmarked February 15, 2022, *see* ECF No. 1-1 at PageID.36. The court thus deems the Petition filed on February 14, 2022.

conviction and subsequent appeals in Hawaii state courts, claiming violations of (1) his Sixth Amendment right to effective assistance of counsel and (2) a due process right under the Fourteenth Amendment to call witnesses in support of his defense.  ECF No. 1 at PageID.5−7.  Stangel also alleges that he improperly received consecutive life sentences based on a consideration of a dismissed criminal charge, in violation of his right to due process.  *Id.* at PageID.8.

As explained to follow, Stangel's claims are almost all procedurally barred under applications of adequate and independent Hawaii procedural law.  *See Coleman v. Thompson*, 501 U.S. 722 (1991).  The claims that are not procedurally barred fail on the merits as they do not involve "an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States" or did not "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," as required by 28 U.S.C. § 2254(d)(1) & (2).  The court thus DENIES the Petition because Stangel is not being held in violation of the Constitution, laws, or treaties of the United States.

The court issues a certificate of appealability as to only one issue— whether Stangel was denied a federal right to present a complete defense by the Hawaii trial court's exclusion of proffered defense expert witness Dr. Marvin Acklin given *State v. Abion*, 148 Haw. 445, 478 P.3d 270 (2020), which was issued

while state collateral review proceedings were pending.  *See* R. 11(a) of the Rules

Governing Section 2254 Cases in the United States District Courts ("Section 2254

Rules") (requiring the district court to issue or deny a certificate of appealability

when entering a final order adverse to a § 2254 applicant).

## II.  <u>BACKGROUND</u>

**A.     The Crime, Conviction, and Initial Sentencing in the State Trial Court**

As broadly summarized by the Hawaii Intermediate Court of Appeals

("ICA"), this case arises from the following events:

> On June 3, 2011, beginning at about 12:30 a.m., Stangel
> fired several shots at motorists stopped at the intersection
> of Kapiolani Boulevard and Waialae Avenue.  Stangel
> shot at Michael Pagdilao three times.  Stangel shot and
> killed Tammy Nguyen in front of her teenaged daughter,
> Cindy Nguyen, discharging nine shots.  Stangel drove
> onto the H–1 Freeway in a westbound direction and, near
> the Likelike offramp, shot at Amie Lou Ascuncion three
> times, hitting her once in the back.  Stangel shot Samson
> Naupoto, who attempted to help Amie Lou Ascuncion,
> once in the leg.  Proceeding further west on the Moanalua
> Freeway by the H–1 off-ramp, Stangel fired four or five
> shots at HPD Officers Robertson and Ogasawara, who
> were supporting a traffic stop.  Stangel was eventually
> apprehended near the Kaamilo Street overpass on the H–
> 1 Freeway.

ECF No. 10-18 at PageID.535−36; *Stangel v. State*, 149 Haw. 208, 485 P.3d 1120,

2021 WL 1819821, at *1 (Haw. Ct. App. May 6, 2021) (mem.) ("*Stangel II*")

(quoting *State v. Stangel*, 2015 WL 836928 (Haw. Ct. App. Feb. 26, 2015 (mem.)

("*Stangel I*")).

On June 8, 2011, Stangel was indicted on 20 counts in violation of various Hawaii criminal statutes.  *See* ECF No. 10-7 (*Stangel I*, 2015 WL 836928, at *1).  On May 16, 2013, Stangel was convicted in the Circuit Court of the First Circuit of the State of Hawaii ("First Circuit Court" or "trial court") of one count of murder in the second degree and two counts of attempted murder in the second degree, along with other counts for reckless endangering and for various firearms-related violations.  *See* ECF No. 1 at PageID.24–25; ECF No. 10-3 at PageID.97.

On August 14, 2013, the First Circuit Court sentenced Stangel to three consecutive terms of life imprisonment with the possibility of parole, with mandatory minimums of 20 years imprisonment for each consecutive term.[3]  ECF No. 10-3 at PageID.99.  Throughout his trial and sentencing, Stangel was represented by attorney John Schum.  *See* ECF No. 1 at PageID.13; ECF No. 10-3 at PageID.97.

## B.    Direct Appeal from Conviction and Initial Sentencing

Stangel—through his appellate counsel, the State of Hawaii Office of the Public Defender ("OPD")—appealed his conviction and sentence to the ICA, arguing that the trial court erred in five ways:

(1) "Precluding the Expert Testimony of Dr. Acklin," a forensic psychologist and Stangel's expert witness;

---

[3]  Stangel's other sentences on his convictions for offenses other than murder and attempted murder, *see* ECF No. 10-3 at PageID.99, were to run concurrently with the life sentences.  *See id.*

4

(2) "Failing to Give the Jury an Instruction Under [Hawaii law] on the Possible Merger of the Firearms Charges and Mandatory Minimum Sentences Under [Hawaii law]";

(3) "Failing to Include the Requisite State of Mind Element for the Special Interrogatories Given to the Jury";

(4) "Considering Stangel's Suppressed Statements at Sentencing," in violation of "the Due Process Clauses of the [Hawaii] and Federal Constitutions"; and

(5) "Unconstitutionally Punish[ing] Stangel By Improperly Considering an Unsubstantiated Allegation of Misconduct Against Him and Sentencing Him to Consecutive Terms of Imprisonment."

ECF No. 10-4 at PageID.133–52. All but the second point of error, in addition to state law, also included references or relied upon federal law. *See id.*; *see also* ECF No. 10-6.

The ICA issued a memorandum opinion on February 26, 2015, rejecting all of Stangel's points of errors except for the fifth. ECF No. 10-7 (*Stangel I*, 2015 WL 836928, at *1). The first claim—regarding the exclusion of Dr. Acklin's testimony—becomes important for purposes of federal habeas review, and the court analyzes the trial court's ruling for that claim in much more detail later in this Order. The ICA upheld Stangel's conviction but vacated the consecutive terms of life imprisonment (agreeing with Stangel that the trial court improperly considered uncharged and unsubstantiated conduct in imposing consecutive sentences) and remanded to the trial court for resentencing. *Id.* at

PageID.271 (*Stangel I*, 2015 WL 836928, at *14).  Stangel sought to appeal the unfavorable aspects of the ICA's decision by filing an Application for Writ of Certiorari with the Hawaii Supreme Court on May 27, 2015.  ECF No. 10-8.  The Hawaii Supreme Court rejected the application on July 9, 2015.  ECF No. 10-10.

## C.   Resentencing in the State Trial Court

On remand, on March 23, 2016, the trial court (through a different judge) issued an Amended Judgment of Conviction and Sentence that again sentenced Stangel to three consecutive terms of life imprisonment with the possibility of parole, with mandatory minimums of 20 years' imprisonment for each consecutive term.  ECF No. 10-11 at PageID.360.  Stangel was again represented by attorney John Schum during resentencing.  *See id.* at PageID.358. Stangel did not appeal his resentencing, *id.*, and thus the judgment on his conviction and sentence became final for purposes of post-conviction relief under Hawaii Rule of Penal Procedure ("HRPP") 40(a)(1).[4]

---

[4]  HRPP 40(a)(1) provides in part:

> For the purposes of this rule, a judgment is final when the time for direct appeal under Rule 4(b) of the Hawaii Rules of Appellate Procedure has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated, provided that a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court.

**D.      State Court Post-Conviction Challenge (Rule 40 Petition)**

After judgment became final, Stangel sought post-conviction relief

through a pro se Petition under HRPP 40.  *See* ECF No. 10-12 ("Rule 40

Petition").  Stangel filed his Rule 40 Petition on November 29, 2016, arguing that

his conviction and sentence should be vacated on the following five grounds

(among others):

> (1) he was provided ineffective assistance of counsel by
> his trial counsel, John Schum, because Mr. Schum failed
> to take certain actions during Stangel's criminal trial;
>
> (2) the trial court erred by excluding Dr. Acklin's expert
> testimony;
>
> (3) the trial court erred by preventing the remainder of
> Stangel's trial witnesses from testifying;
>
> (4) the trial court erred by failing to give jury instructions
> on a defense of Extreme Mental and Emotional Distress
> ("EMED"); and
>
> (5) the trial court erred *in the initial sentencing* by
> "issuing [Stangel] a sentence of three (3) life terms, each
> with a mandatory minimum of twenty (20) years, to be
> run consecutively to each other, . . . [based] on two
> erroneous findings."[5]

---

[5]  Stangel was making this improper-sentencing claim against the trial court's initial sentencing—not its resentencing—because his Rule 40 Petition cites the transcript from the initial-sentencing hearing when identifying the "two erroneous findings."  *See* ECF No. 10-12 at PageID.383–84.  As just explained, the ICA had in fact found error in that initial sentencing and had remanded for further proceedings.

*Id.* at PageID.378–85; ECF No. 10-14 at PageID.428.  Stangel primarily referenced or relied upon federal law when asserting those grounds in his Rule 40 Petition. *See* ECF No. 10-12 at PageID.378−85.

The First Circuit Court dismissed Stangel's Rule 40 Petition on December 29, 2017.  ECF No. 10-14.  For the first ground, the court determined that Stangel had waived his ineffective-assistance-of-counsel claim by not raising it on direct appeal to the ICA.  *Id.* at PageID.430 (applying HRPP 40(a)(3)[6]). Similarly, the court concluded that Stangel had waived his third ground (erroneous exclusion of trial witnesses) by not raising that claim of error with the ICA on direct appeal.  *Id.* at PageID.431 (applying HRPP 40(a)(3)).  As for the second ground (erroneous exclusion of Dr. Acklin's testimony) and as for the fourth ground (improper sentencing), the First Circuit Court recognized that those

---

[6] HRPP 40(a)(3) provides:

> Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

grounds of error had been "previously ruled upon" by the ICA, precluding further review under HRPP 40(a)(3).  *Id.* at PageID.431, 433.

On January 24, 2018, Stangel appealed the dismissal of his Rule 40 Petition to the ICA.  *See* ECF No. 10-18 at PageID.538 n.4.  As to ineffective assistance, Stangel argued (among other things) that the First Circuit Court erred because it should have construed that claim as also being asserted against his appellate counsel (not just his trial counsel).  *See* ECF No. 10-15 at PageID.455–59.  Stangel also reasserted his claim that the trial court committed "plain error" by preventing all his trial witnesses—including Dr. Acklin—from testifying.  *See id.* at PageID.460.  Further, Stangel reasserted his improper-sentencing claim but did so with respect to the resentencing instead of the initial sentencing.  *See id.*

On May 6, 2021, the ICA rejected Stangel's claims and affirmed the dismissal of the Rule 40 Petition.  ECF No. 10-18 at PageID.545 (*Stangel II*, 2021 WL 1819821, at *7).  The ICA held that Stangel's ineffective-assistance claim was precluded because he failed to serve a copy of his Rule 40 Petition on his appellate counsel (the OPD) in violation of HRPP 40(f).[7]  ECF No. 10-18 at PageID.540–41 (*Stangel II*, 2021 WL 1819821, at *4).  As for Stangel's claims regarding the

---

[7]  HRPP 40(f) provides that, "[w]here the [Rule 40] petition alleges the ineffective assistance of counsel as a ground upon which the requested relief should be granted, the petitioner shall serve written notice of the hearing upon the counsel whose assistance is alleged to have been ineffective and said counsel shall have an opportunity to be heard."

exclusion of defense witnesses, the ICA did not reach the question regarding the exclusion of Dr. Acklin's testimony, agreeing with the trial court that the claim had already been addressed on direct appeal (precluding further review under HRPP 40(a)(3)). *See id.* at PageID.542 (*Stangel II*, 2021 WL 1819821, at *5). The ICA agreed that the other component—the exclusion of testimony from defense witnesses *other* than Dr. Acklin—had been waived under HRPP 40(a)(3), given that Stangel did not raise that component of his claim in his direct appeal. *See id*. Next, the ICA reached the merits of Stangel's improper-resentencing claim, but rejected it, reasoning that "the judge who resentenced Stangel properly considered the factors set forth in HRS § 706-606 in determining whether the terms imposed are ordered to run concurrently or consecutively." *Id.* at PageID.543–44 (*Stangel II*, 2021 WL 1819821, at *6) (citation and internal quotation marks omitted).

Stangel filed an Application for Writ of Certiorari with the Hawaii Supreme Court, challenging the ICA's affirmance of the denial of his Rule 40 Petition. ECF No. 10-19. The Hawaii Supreme Court rejected that application on September 16, 2021. ECF No. 10-21.

## E.    Collateral Challenge in Federal Court

On February 14, 2022, Stangel filed the instant Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, proceeding pro se. ECF Nos. 1, 1-1. Respondent Shawn Wead—the Warden at Saguaro Correctional Center in Arizona,

where Stangel is being held—filed his Answer to the Petition on May 17, 2022.[8]

ECF No. 10.  Stangel filed his Reply on June 14, 2022.  ECF No. 11.

On October 27, 2022, the court requested supplemental briefing

regarding the claim that the exclusion of Dr. Acklin's testimony violated a

constitutional right.  ECF No. 13.  The court asked a series of questions based on

*Abion*, a 2020 Hawaii Supreme Court opinion that—as analyzed later in this

Order—concerned issues potentially related to Dr. Acklin's proposed testimony.

---

[8] Consistent with 28 U.S.C. § 2242 (requiring, inter alia, an application for a writ of habeas corpus to name "the person who has custody over" the applicant), Rule 2(a) of the Section 2254 Rules requires a petition to name as respondent "the state officer who has custody" of the petitioner.  *See, e.g.*, *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996).  "According to the advisory committee's note [to Rule 2(a)], the 'state officer having custody' may be 'either the warden of the institution in which the petitioner is incarcerated . . . or the chief officer in charge of state penal institutions.'"  *Id.*  Saguaro is a private correctional facility, and although Wead is Saguaro's warden, nothing indicates that Wead is employed by the State of Hawaii or is otherwise a "state officer."  The Petition names only Wead as respondent; it does not name the Director of the Hawaii Department of Public Safety (or any other "state officer who has custody" of Stangel).

"Failure to name the correct respondent [in a § 2254 petition] destroys personal jurisdiction."  *Id.*  Applying that principle, the Ninth Circuit has upheld the dismissal of a § 2254 petition for failure to name the proper respondent, where the petition named only the warden of a private correctional facility, because the warden was not a "state officer."  *See Sky v. Stolc*, 497 F. App'x 696, 697 (9th Cir. 2012) (mem.).  *See also, e.g.*, *Clemons v. Owens*, 2015 WL 858390, at *2 (S.D. Ga. Feb. 27, 2015) (dismissing warden of private prison as respondent in a § 2254 petition because the warden was not a "state officer" under Rule 2(a)).

Nevertheless, Wead is represented by attorneys from the Office of the Prosecuting Attorney for the City and County of Honolulu, on behalf of the State of Hawaii Attorney General, *see* ECF No. 6 at PageID.46 n.1.  Although not naming the proper respondent destroys personal jurisdiction, *Ortiz-Sandoval*, 81 F.3d at 894, Wead has not challenged personal jurisdiction.  A lack of personal jurisdiction is waivable.  *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Marisco, Ltd. v. Am. Samoa Gov't*, 889 F. Supp. 2d 1244, 1248–49 (D. Haw. 2012) (finding defendant had consented to personal jurisdiction by filing an answer and failing to raise the lack of personal jurisdiction in a Rule 12 motion).  Given this waiver of personal jurisdiction, the court proceeds to address the substance of the § 2254 petition even if it does not name "the state officer who has custody" as respondent.

*Id.*  Respondent filed his supplemental brief on November 17, 2022, ECF No. 17.

Meanwhile, the court had granted Stangel an extension of time to file his

supplemental brief.  ECF No. 16.  On December 12, 2022, as noted earlier,

attorney Robert J. Christensen entered an appearance for Stangel, who had been

proceeding pro se.  ECF No. 18.  Christensen subsequently sought and received

two additional extensions of time to file Stangel's supplemental brief, ECF Nos.

10, 22, which was filed on April 13, 2023.  ECF No. 23.  The court decides the

matter without a hearing under Local Rule 7.1(c).

### III.  <u>STANDARDS OF REVIEW</u>

**A.    Review of State Court Judgments under 28 U.S.C. § 2254**

Stangel seeks relief under 28 U.S.C. § 2254, which provides in

pertinent part:

> (a)  The Supreme Court, a Justice thereof, a circuit judge,
> or a district court shall entertain an application for a writ
> of habeas corpus in behalf of a person in custody
> pursuant to the judgment of a State court only on the
> ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.
> . . . .

> (d)  An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—

>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

Review under § 2254(d) is "highly deferential." *See, e.g.*, *Moses v.
Payne*, 555 F.3d 742, 746 (9th Cir. 2009) (reiterating that the "standard for
evaluating state-court rulings in the habeas context" is "highly deferential"
(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  The U.S. Supreme Court
"ha[s] repeatedly held that 'federal habeas corpus relief does not lie for errors of
state law.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*,
502 U.S. 62, 67 (1991)).

Congress amended § 2254 with the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), which "[i]n many ways . . . represented a
sea change in federal habeas law." *Brown v. Davenport*, 142 S. Ct. 1510, 1524
(2022).  "Congress instructed [in AEDPA] that, if a state court has adjudicated the
petitioner's claim on the merits, a federal court 'shall not' grant habeas relief
'unless' certain conditions are satisfied." *Id.* (citing § 2254(d)).   "The question
under AEDPA is thus not whether a federal court believes the state court's
determination was incorrect, but whether that determination was unreasonable— 'a
substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 142 S.
Ct. 2037, 2043 (2022)) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

And "[i]f this standard is difficult to meet, that is because it was meant to be [by AEDPA]."  *Harrington v. Richer*, 562 U.S. 86, 102 (2011).

## B.    Exhaustion of Available State Court Remedies

Before a federal court can address the merits of a § 2254 claim, a petitioner must have exhausted all available state court remedies, as required by 28 U.S.C. § 2254(b)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

*See also Coleman*, 501 U.S. at 731 ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.").

To properly exhaust state remedies, a petitioner must have "fairly presented" the federal claims in the state's courts, including the "state court of last resort" when that court is part of the ordinary review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  "In practical terms, 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process.'" *Kyzar v. Ryan*, 780 F.3d 940, 946 (9th Cir. 2015) (quoting *O'Sullivan*, 526 U.S. at 845). Unless another avenue of relief is mandated by state law, a petitioner may present his claim either on direct appeal or in state collateral proceedings. *See Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987).

Exhaustion requires a petitioner to "clearly alert[] the [state] court that [the petitioner] is alleging a specific federal constitutional violation." *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004). "In order to 'fairly present' an issue to a state court, a [habeas] petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Kyzar*, 780 F.3d at 947 (quoting *Gulbrandson v. Ryan,* 738 F.3d 976, 992 (9th Cir. 2013) (quotation marks omitted)). A petitioner must "either reference[] specific provisions of the federal constitution or cite[] to federal or state cases involving the legal standard for a federal constitutional violation." *Castillo v. McFadden*, 399 F.3d 993, 995 (9th Cir. 2005).

Hawaii law provides two methods for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings under HRPP 40. As noted earlier, HRPP 40 precludes relief on any claim that was

"previously ruled upon" or was "waived" on direct appeal or in a prior post-conviction petition.  *See* HRPP 40(a)(3).

## C.    Procedural Bar or Default Under 28 U.S.C. § 2254

"In addition to the exhaustion requirement, a federal court may not hear a habeas claim if it runs afoul of the procedural bar doctrine."  *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011); *see also Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012) ("[A] state prisoner's failure to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in the federal court by the adequate and independent state ground doctrine." (citing *Coleman*, 501 U.S. at 731–32)).  "[Under] the doctrine of procedural default . . . a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

To constitute a procedural bar in a federal habeas corpus proceeding, a state court's application of a procedural rule must be independent of federal law and adequate to support the judgment.  *See Coleman*, 501 U.S. at 729–30.  "To be adequate, the rule must be 'firmly established and regularly followed' at the time of the purported default."  *Williams v. Filson*, 908 F.3d 546, 577 (9th Cir. 2018) (citing *Beard v. Kindler*, 558 U.S. 53, 60 (2009)).  If a respondent adequately

pleads the existence of an independent and adequate state procedural ground, the burden shifts to the petitioner, who must assert "specific factual allegations that demonstrate the inadequacy of the state procedure," including citation to authority demonstrating inconsistent application of the rule. *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003) (citations omitted).

Nevertheless, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions.  A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez*, 566 U.S. at 10 (citing *Coleman*, 501 U.S. at 750); *see also, e.g.*, *Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("The bar to federal review may be lifted, however, if 'the prisoner can demonstrate cause for the procedural default in state court and actual prejudice as a result of the alleged violation of federal law.'" (quoting *Coleman*, 501 U.S. at 750) (internal editorial marks omitted)).  Review of a defaulted claim is also possible if a petitioner can demonstrate a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, e.g., the conviction of "one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Although related, the doctrines of failure to exhaust and procedural default are distinct.  "The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that

opportunity may still be available to the petitioner under state law." *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (citing 28 U.S.C. § 2254(c)).  "In contrast, the procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'"  *Id.* at 1230–31 (quoting *Harris v. Read*, 489 U.S. 255, 263 & n.9 (1989)).

The primary difference is that "[i]f a petitioner's claims are unexhausted, the district court can dismiss the petition without prejudice to give the prisoner a chance to return to state court to litigate his unexhausted claims before he can have the federal court consider his claims."  *Id.* at 1231 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).[9]  But, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default . . . the district court dismisses the petition because the petitioner has no further recourse in state court."  *Id.* (citing *Reed v. Ross*, 468 U.S. 1, 9 (1984)).

HRPP 40 has procedural requirements that, if violated, could constitute procedural bars to federal-habeas review.  One pertains to a claim for

---

[9]  If a petition is mixed—that is, it contains both exhausted and unexhausted claims—a court can stay the petition and hold it in abeyance to allow a petitioner to exhaust claims in state court, or, if inappropriate to stay, "allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."  *Dixon v. Baker*, 847 F.3d 714, 719 (9th Cir. 2017) (quoting *Rhines v. Weber*, 544 U.S. 269, 278 (2005)).

ineffective assistance of counsel that requires "counsel whose assistance is alleged to have been ineffective" to be "served written notice of the hearing" to allow that counsel to be heard.  HRPP 40(f).[10]  And Rule 40(a)(3), as noted earlier, requires that a petitioner not have "waived" a claim by "knowingly and understandingly fail[ing] to raise it . . . before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under [HRPP 40]."  Like Rule 40(f), Rule 40(a)(3) is an "adequate and independent" state ground for dismissing a federal claim for purposes of habeas review.  *See, e.g.*, *Elizares v. Parker*, 2007 WL 2048832, at *3 (D. Haw. July 12, 2007) ("The Ninth Circuit Court of Appeals has held that [HRPP] 40(a)(3) is consistently applied and an adequate and independent state procedural rule sufficient to support procedural default." (citing *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003)).

---

[10]  Rule 40(f) is "adequate" and "independent."  *Coleman*, 501 U.S. at 729−30.  Petitioner has not cited any instance of inconsistent application of Rule 40(f), and Hawaii case law establishes that Rule 40(f) is firmly established and consistently applied.  *See State v. Urbanski*, 145 Haw. 143, 448 P.3d 989, 2019 WL 4454423, at *8 (Haw. Ct. App. Sept. 17, 2019) (applying Rule 40(f)) (unpublished); *Clement v. State*, 146 Haw. 119, 456 P.3d 192, 2020 WL 502157, at *3 (Haw. Ct. App. Jan. 30, 2020) (unpublished); *Cornelio v. State*, 146 Haw. 625, 463 P.3d 1282, 2020 WL 2736577, at *6 (Haw. Ct. App. May 26, 2020) (unpublished); *Hughes v. State*, 150 Haw. 364, 501 P.3d 333, 2021 WL 6143055, at *10 (Haw. Ct. App. Dec. 30, 2021) (unpublished).

# IV. <u>ANALYSIS</u>

Stangel's § 2254 Petition raises three grounds: (1) violations of his Sixth and Fourteenth Amendment right to adequate representation in his criminal case, given the alleged ineffective assistance of both his trial and appellate counsel; (2) violation of his Fourteenth Amendment right to call witnesses in support of his defense, through the trial court's excluding "all defense witnesses," including Dr. Acklin; and (3) violation of his general right to due process under the Fourteenth Amendment, considering how the trial court effectively treated his "deferred acceptance of no contest plea" as a prior conviction. *See* ECF No. 1 at PageID.5–10.

To summarize, the first claim is procedurally barred, as is the second claim to the extent based on exclusion of defense witnesses *other* than Dr. Acklin. And the second claim regarding exclusion of Dr. Acklin's testimony—although not procedurally barred—fails on the merits because it was (1) not contrary to or did not involve a violation of clearly established federal law as determined by the U.S. Supreme Court, (2) nor was it an unreasonable application of such federal law. The third claim is also procedurally barred and, even if not, it is denied on its merits because it involves neither a violation of clearly established federal law as determined by the U.S. Supreme Court nor an unreasonable application of such law.

**A.      Ineffective Assistance of Counsel**

Stangel raises ineffective-assistance-of-counsel claims against both

his trial counsel and appellate counsel.  *See* ECF No. 1 at PageID.5.  Stangel

contends that:

> In violation of [my] right to <u>Effective Assistance of
> Counsel</u>, as guaranteed by the . . . 5th, 6th, and 14th
> Amendments, trial counsel failed to appeal trial court's
> decision to: 1) Eliminate Defense's entire witness list;
> 2) Not allow Defense's expert witness to testify on
> Petitioner's behalf; 3) Not grant a Change of Venue;
> 4) Not give jury instructions on mitigating defense of
> EMED.  Trial counsel's acceptance of these adverse
> decisions without appeal demonstrate a profound lack of
> "diligence, knowledge, or skill."  Appellate counsel
> demonstrated the same lack by not addressing trial
> counsel's ineffectiveness in Petitioner's direct appeal.

*Id.*

Stangel's ineffective-assistance claim against his trial counsel is

procedurally barred because Stangel waived that claim under HRPP 40(a)(3).  As

the First Circuit Court explained when denying Stangel's Rule 40 Petition on

waiver grounds, *see* ECF No. 10-14 at PageID.430, under Hawaii law, a petitioner

waives an ineffective-assistance claim against his trial counsel when he does not

raise that claim on direct appeal (if his appellate counsel is different from his trial

counsel).  *See, e.g.*, *Briones v. State*, 74 Haw. 442, 459, 848 P.2d 966, 975 (1993)

("Where petitioner has been represented by the same counsel both at trial and on

direct appeal, no waiver of the issue of trial counsel's performance occurs [under

Rule 40(a)(3)] because no realistic opportunity existed to raise the issue on direct appeal."); *Ruiz v. State*, 117 Haw. 524, 184 P.3d 839, 2008 WL 2225666, at *4 (Haw. Ct. App. 2008) ("To the extent that any of those issues is construed as raised for ineffective assistance of trial counsel or on different legal grounds, each of those claims is waived [under Rule 40(a)(3)] where [defendant], represented by different counsel on appeal, failed to raise the ground previously and fails to demonstrate extraordinary circumstances to justify his failure to do so.") (unpublished).  And Rule 40(a)(3) is an adequate and independent state procedural rule that was "well-established and consistently applied."  *Cockett*, 333 F.3d at 943.

Similarly, Stangel's ineffective-assistance claim against his appellate counsel, the OPD, is procedurally barred under Rule 40(f) because Stangel failed to serve a copy of his Rule 40 Petition on the OPD, a failure that precludes Hawaii state courts from considering Stangel's ineffective-assistance claim against the OPD.  The ICA declined to reach Stangel's claim for that very reason, *see* ECF No. 10-18 at PageID.541 (*Stangel II*, 2021 WL 1819821, at *4), thus relying on an adequate and independent state procedural rule that bars this court from reaching the claim.  *See Martinez*, 566 U.S. at 9.[11]

---

[11]  As noted earlier, Rule 40(f) is firmly established and consistently applied.  *See Loher v. Thomas*, 825 F.3d 1103, 1117–18 (9th Cir. 2016) (upholding, on habeas review, the ICA's application of Rule 40(f) to an ineffective-assistance-of-counsel claim).

Stangel argues to this court that he did, in fact, serve his appellate counsel a copy of the Rule 40 Petition. *See* ECF No. 11 at PageID.678. In support, he provides a copy of a prison mail log and a certificate of service indicating that he mailed a copy of the petition to the Office of the *Federal* Public Defender. ECF No. 10-19 at PageID.574, 576. Although the Federal Public Defender is not the State's OPD, Stangel describes how his assigned attorney from the OPD—then-State Deputy Public Defender Craig Jerome—took a position with the Office of the Federal Public Defender sometime after Stangel's direct appeal and before he began his post-conviction litigation. *See id.* at PageID.574. Mr. Jerome's job-change makes it understandable why Stangel, proceeding pro se, mailed a copy of his Rule 40 Petition to the Federal Public Defender and not the State OPD.

But one flaw with Stangel's argument is that it may be proper to view Stangel's appellate "counsel" for purposes of HRPP 40(f) as the OPD, not Mr. Jerome himself. The ICA, interpreting Hawaii law, certainly appears to have adopted that view. *See* ECF No. 10-18 at PageID.540–41 (*Stangel II*, 2021 WL 1819821, at *4) ("The Office of the Public Defender was appointed counsel for Stangel effective September 19, 2013. . . . Stangel did not serve the Office of the Public Defender with his Rule 40 Petition. . . . Stangel's failure [to serve] precluded the circuit court from considering any claim by Stangel that his appellate

23

attorney was ineffective."); *see also State v. Harter*, 134 Haw. 308, 312, 340 P.3d 440, 444 (2014) ("The Office of the Public Defender was appointed as Harter's counsel."). *But cf.* Haw. R. App. P. 28(a) ("If a brief raises ineffective assistance of counsel as a point of error, the appellant shall serve a copy of the brief on the attorney alleged to have been ineffective.").

Nevertheless, even if it would be reasonable to view Mr. Jerome himself as Stangel's appellate counsel, Stangel's claim was still improper because—although he attempted to exhaust it in his Rule 40 proceedings—he did not produce his evidence (the mail log or the certificate of service) to either the First Circuit Court or the ICA during his post-conviction litigation. *See* ECF Nos. 10-12, 10-15, 10-17. Instead, he attached that evidence for the first time to his Application for Writ of Certiorari to the Hawaii Supreme Court regarding his Rule 40 Petition denial, *see* ECF No. 10-19 at PageID.574–76, thereby violating established Hawaii appeal procedures. *See* HRS § 641-2(b) ("Every appeal [in a civil matter] shall be taken on the record, and no new evidence shall be introduced in the supreme court."); *Pickering v. State*, 57 Haw. 405, 409, 557 P.2d 125, 128 (1976) ("[The Hawaii Supreme Court] court cannot consider such evidence outside the record, which was not before the trial court, for purposes of appellate review.").

Essentially, Stangel procedurally defaulted a second time by violating different state procedures (i.e., besides Rule 40(f)).[12]

Moreover, if considered as new evidence, this court could not consider that evidence in this federal habeas petition either. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("The federal habeas scheme leaves primary responsibility with the state courts. . . .  It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*." (citation and internal quotation marks omitted)).  In any event, the claim was denied based upon adequate and independent state law procedural grounds.

In short, Stangel is procedurally barred from bringing both of his ineffective-assistance-of-counsel claims in this § 2254 Petition.  And Stangel has

---

[12]   The Hawaii Supreme Court's one sentence rejection of the application for certiorari did not explicitly mention this procedural violation as a basis for rejecting the claim, and so this court—although it might be able to—does not rely on this violation as a procedural default. *See Harris v. Reed*, 489 U.S. 255, 263 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.") (citation omitted); *Coleman*, 501 U.S. at 740 (limiting the "*Harris* presumption" only to situations after a court has determined that "the relevant state court decision . . . fairly appear[s] to rest primarily on federal law or to be interwoven with [federal] law").  Because the underlying violation of Rule 40(f) does constitute a procedural bar, the court need not analyze this second violation.

not demonstrated cause for the procedural defaults, nor that a denial would result in a fundamental miscarriage of justice.  *See Martinez*, 566 U.S. at 9–10.

## B.   Deprivation of Right to Call Defense Witnesses

Stangel claims that his "right to Due Process, as guaranteed by the . . . 5th, 6th, and 14th Amendments" was violated when the "trial court granted the prosecution's Motion in Limine to eliminate [his] entire witness list" "despite [his] constitutional right 'to have compulsory process for obtaining witnesses in his favor.'"  ECF No. 1 at PageID.7.  Stangel further claims that the trial court violated his due process right to call witnesses when it precluded Dr. Acklin from testifying.  *Id.*

### 1.   *Witnesses Other Than Dr. Acklin*

Stangel's claim regarding the exclusion of witnesses *other* than Dr. Acklin is procedurally barred.  In his direct appeal to the ICA, Stangel only challenged the exclusion of Dr. Acklin—not as to any other proposed witnesses.  *See* ECF Nos. 10-4, 10-6.  Stangel attempted to raise a claim as to other witnesses in his Rule 40 Petition, but both the First Circuit Court and the ICA declined to reach that claim because it had been waived by application of HRPP 40(a)(3).  *See* ECF No. 10-14 at PageID.431; ECF No. 10-18 at PageID.542 (*Stangel II*, 2021 WL 1819821, at *5).  Further, Stangel has not demonstrated cause for the procedural default, nor a fundamental miscarriage of justice if the court denies this

claim.  Having been denied on adequate and independent state law grounds, this federal court cannot reach that claim on habeas review.  *See Martinez*, 566 U.S. at 9.

### 2.    *Exclusion of Dr. Acklin*

But Stangel's claim regarding exclusion of Dr. Acklin's testimony—the claim for which the court sought supplemental briefing—is not procedurally barred given that the ICA denied the claim on the merits on direct appeal.[13] Further, as required by 28 U.S.C. § 2254(b)(1)(A), Stangel exhausted that claim by fairly presenting it in state court as a violation of federal law.  *See* ECF No. 10-4 at PageID.118–126 (Stangel arguing on direct appeal that the exclusion of "Expert Testimony of Dr. Acklin," violated his "right to present a defense, right to a fair trial and right to due process under amendments 6 and 14 of the U.S. Constitution"); ECF No. 10-7 at PageID.254–57 (*Stangel I*, 2015 WL 836928, at *2–8) (ICA rejecting Stangel's claim of error with respect to Dr. Acklin's testimony); ECF No. 10-8 at PageID.280 (Stangel raising claim of error with

---

[13]  Although HRPP 40(a)(3) prohibits state habeas review of a claim that was "previously ruled upon" in state court, the First Circuit Court and the ICA's invocation of that provision to deny further habeas review in state court does not constitute a procedural default for purposes of federal habeas review here because the "previously ruled upon" claim had "fairly presented" a federal constitutional issue on direct appeal.  Rather, the invocations of that rule essentially confirm that the claim was exhausted on direct appeal for purposes of federal habeas review. "[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner 'to ask the state for collateral relief, based on the same evidence and issues already decided by direct review,'" in order to exhaust his state remedies.  *Castille v. Peoples*, 489 U.S. 346, 350 (1989) (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

respect to Dr. Acklin's testimony in his Application for Writ of Certiorari to the

Hawaii Supreme Court, relying in part on the "right to a fair trial and right to due

process as guaranteed by the Sixth and Fourteenth Amendments"). The court thus

proceeds to address this claim on its merits.

The court begins with some necessary background to understand the

context for Stangel's claim regarding Dr. Acklin. Stangel's defense at trial was

based—at least in part—on a lack of penal responsibility. In this regard, HRS

§ 704-400(1), Hawaii's insanity defense, provides:

> A person is not responsible, under this Code, for conduct
> if at the time of the conduct as a result of physical or
> mental disease, disorder, or defect the person lacks
> substantial capacity either to appreciate the wrongfulness
> of the person's conduct or to conform the person's
> conduct to the requirements of law.

A lack of responsibility based on a physical or mental disease, disorder, or defect is

an affirmative defense. *See* HRS § 704-402(1). But this defense is qualified—

Hawaii also has statutory provisions prohibiting "self-induced intoxication" as a

defense, except in specific circumstances. *See* HRS § 702-230.[14] Among other

---

[14] In full, HRS § 702-230 provides:

> **§702-230 Intoxication.** (1) Self-induced intoxication is
> prohibited as a defense to any offense, except as specifically
> provided in this section.
>     (2) Evidence of the nonself-induced or pathological
> intoxication of the defendant shall be admissible to prove or
> negative the conduct alleged or the state of mind sufficient to

(continued . . . )

provisions, § 702-230(2) specifically provides that "[e]vidence of self-induced intoxication of the defendant is not admissible to negative the state of mind sufficient to establish an element of the offense."  And § 702-230(4) provides that "[i]ntoxication that is: (a) Not self-induced; or (b) Pathological, is a defense if by reason of the intoxication the defendant at the time of the defendant's conduct lacks substantial capacity either to appreciate its wrongfulness or to conform the

---

establish an element of the offense.  Evidence of self-induced intoxication of the defendant is admissible to prove or negative conduct or to prove state of mind sufficient to establish an element of an offense.  Evidence of self-induced intoxication of the defendant is not admissible to negative the state of mind sufficient to establish an element of the offense.

(3)  Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400.

(4)  Intoxication that is:

(a)  Not self-induced; or

(b)  Pathological,

is a defense if by reason of the intoxication the defendant at the time of the defendant's conduct lacks substantial capacity either to appreciate its wrongfulness or to conform the defendant's conduct to the requirements of law.

(5)  In this section:

"Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body.

"Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant.

"Self-induced intoxication" means intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know, unless the defendant introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of a penal offense.

defendant's conduct to the requirements of law."  For these purposes,

"intoxication" "means a disturbance of mental or physical capacities resulting from

the introduction of substances into the body."  HRS § 702-230(5).

There is no question that Stangel had a long history of drug abuse,

starting from as early as age 13.  *See* ECF No. 10-23 at PageID.653, 656−57.

There also was limited evidence that he had, although the amount is unclear, used

cocaine on the night of the crimes.  *See id.* at PageID.663−64.  And so, the

interplay between HRS § 704-400 and § 702-230 became a major issue at or before

trial, and forms the basis of challenges to the exclusion of Dr. Acklin's testimony

as to Stangel's defense of lack of penal responsibility.

     a.     *The Trial Court's Exclusion of Dr. Acklin's Proposed*
*Testimony and Opinions*

As detailed to follow, Dr. Acklin's proposed testimony and

opinions—excluded by the First Circuit Court under HRS § 702-230—were

somewhat of a moving target.[15]  At an April 26, 2013 hearing on the prosecution's

motion in limine to preclude Dr. Acklin's testimony, Stangel's counsel proffered

that Dr. Acklin would testify that Stangel might have had (despite his drug history)

some other mental disease or defect which Dr. Acklin characterized as "settled

---

[15]  Although Dr. Acklin's testimony was excluded under § 702-230, his proposed
testimony was intended specifically to support an insanity defense under HRS § 704-400.  *See*
ECF No. 10-7 at PageID.254 (*Stangel I*, 2015 WL 836928, at *7).

insanity where you abuse drugs over a period of time, it damages your brain and your brain never returns to normal." ECF No. 10-22 at PageID.617. He proffered that Dr. Acklin would testify that Dr. Acklin could not tell whether Stangel's behavior "was caused by the drugs or the prior mental health issues." *Id.* at PageID.618.

In response, however, the trial court emphasized that such proffered testimony would have directly contradicted conclusions in Dr. Acklin's written expert report. *See id.* at PageID.617−18 (trial court stating to counsel "that is not what Dr. Acklin says in his report over and over again" and "[a]gain, he would — on this issue, then, he would directly contradict his own report?" with counsel answering "[t]hat's what he has told me"). Indeed, Stangel's counsel forthrightly acknowledged that Dr. Acklin's written report was completely inconsistent with what he sought to admit at trial as testimony. *See id.* at PageID.617. Further, Stangel's memorandum opposing the prosecution's motion in limine stated that Dr. Acklin would testify *consistent* with his report. *Id.* at PageID.619.

At the April 26, 2013 hearing, based only on the proffer, the trial court excluded Dr. Acklin from testifying under HRS § 702-230. *Id.* at PageID.620−21. The trial court relied primarily on *State v. Young*, 93 Haw. 224, 232, 999 P.2d 230, 238 (2000), in which the Hawaii Supreme Court rejected the argument that "a drug-induced mental illness is a defense" under § 702-230, reasoning in part that

"[i]f an intoxicated person cannot escape ultimate responsibility for his actions, neither should a defendant who chronically engages in substance abuse."  ECF No. 10-22 at PageID.621.[16]  *Young* further explained:  "Only in the instance when the intoxication causes the person to lack the ability to form the requisite state of mind is intoxication a defense.  The same is also true of someone with a drug-induced

---

[16]  To make the point clear that Dr. Acklin's testimony would contradict his written report, the trial court read specific portions of the report into the record when making its initial ruling excluding Dr. Acklin's testimony.  The trial court described the report as "an extraordinarily detailed report.  It's 24 pages long.  Very detailed and also very specific."  ECF No. 10-22 at PageID.619.  The court then quoted two of Dr. Acklin's ultimate written opinions from his report, which were—at least in part—contrary to his proposed testimony:

> [Stangel] has had a history of severe psychosis due to substance dependence.  There is no [a?] strong reason to believe that he is experiencing a settled or chronic substance-induced psychosis.  Toby was experiencing a substance-induced psychotic disorder with paranoid delusional features at the time of the shootings.  He appears to have a long, disabling history of polysubstance abuse and dependence.

> At the time of the criminal offenses, it is my opinion that Mr. Stangel's cognitive and volitional capacities were substantially impaired as a result of substance-induced psychotic disorder with delusions and polysubstance intoxication.  Mr. Stangel was . . . experiencing a substance-induced psychotic disorder with paranoid delusions for many months and perhaps years before the shooting incidents associated with active severe polysubstance abuse and dependence.

*Id.* at PageID.620.  Of course, the written report itself would not preclude Dr. Acklin from testifying contrary to the report.  It is unclear whether, at trial, Stangel would have *also* sought to admit Dr. Acklin's written report into evidence as his opinions in addition to Dr. Acklin's proffered oral testimony, but at minimum the conclusions in the written report would have subjected Dr. Acklin to impeachment on cross-examination by the prosecution.  *See* Haw. R. Evid. 802.1(1)(B).  The question here, however, is whether the trial court's exclusion of Dr. Acklin's proposed oral testimony—whether as proffered, or as he testified to at an evidentiary hearing—violated a federal constitutional right as clearly established by the U.S. Supreme Court.

mental illness."  93 Haw. at 232, 999 P.2d at 238.  The trial court also precluded

Dr. Acklin from testifying as to "pathological intoxication," reasoning that because

he was not a medical doctor, he was not qualified to opine on pathological

intoxication or to testify as to "usual effects" of drugs on "normal people" and as to

a "physical abnormality" of the Defendant.  ECF No. 10-22 at PageID.622.[17]

    But the trial court did not rely only on Stangel's proffer of Dr.

Acklin's proposed testimony.  On May 3, 2013, on a reconsideration motion by

Stangel, the trial court held an evidentiary hearing to hear directly from Dr. Acklin

---

[17]  The trial court gave the following reasoning regarding exclusion of testimony on pathological intoxication:

> In order for Dr. Acklin to be qualified to even opine on this issue, it seems, to me, he would have to know, number one, exactly how much—the amount of the various drugs Mr. Stangel took on that night because the amount of the intoxicant is an element.  And then given the amount of the intoxicant, Dr. Acklin would have to be able to testify . . . as to what the, for lack of a better word, "normal" or "usual effect" of that much cocaine, marijuana—whatever it is—has on a so-called normal, usual person, and then would also have to opine that it was gross—that Mr. Stangel's reaction to the self—to the drugs he voluntarily took was somehow grossly excessive to the amount that he took.  And it doesn't end there.  It's gotta be the result of a physical abnormality of the defendant.

> Dr. Acklin, in his report, gives almost a full page of his qualifications.  I don't see medical doctor there anywhere.  He's a clinical psychologist.  There is no way on God's green earth Dr. Acklin is qualified to opine on pathological intoxication, period.  So I think he would be precluded from rendering an opinion on that, also.

ECF No. 10-22 at PageID.621−22; *see also* ECF No. 10-7 at PageID.248 (*Stangel I*, 2015 WL 836928, at *2).

to allow him "to provide a more specific and detailed offer of proof regarding his

proposed trial testimony."  ECF No. 10-23 at PageID.640.

At the May 3rd hearing, Dr. Acklin explained that after submitting his

written report in January of 2012, he had reviewed three other mental examiner's

reports, had interviewed Stangel's family, had reviewed his medical chart, and had

done a clinical examination a "couple of weeks" before the May 3rd hearing.  *Id.* at

PageID.643.  Given that supplemental information, he wanted to "clarif[y] a

number of points" in his report.  *Id.*  At that hearing, Dr. Acklin testified that in his

report,

> there probably should have been a diagnosis there that
> said substance induced psychotic disorder, resolving
> provisional, which would mean that I haven't entirely
> made up my mind about whether [Stangel] was feigning
> symptoms at that time, or whether he was continuing to
> show the clinical effects of the psychosis that was
> clearly, in my view, present at the time of the offense.

*Id.* at PageID.644−45.  He opined that on the night of the crimes Stangel had—at

least in part—a "stimulant induced psychosis" that had become independent of his

actual drug use.  *Id.* at PageID.644, 651.  *See also id.* at PageID.647 ("[Stangel]

was suffering from a stimulant psychosis . . . that had become settled, independent

of his continuing drug use.").  Dr. Acklin was asked if he believed, "[given] the

facts in this case and the drugs involved, that the decision to use drugs, early June

of 2011, was a volitional decision made by Mr. Stangel?"  *Id.* at PageID.650.  He

answered: "I would argue that it was not . . . whenever you see an individual who has a substance induced psychotic disorder . . . you're dealing with an individual who's no longer operating in a voluntary state of mind." *Id.* at PageID.650−51. He again testified that Stangel's "stimulant psychosis" was a "psychotic disorder" that was "independent of the specific incidence of drug intoxication." *Id.* at PageID.653.

Dr. Acklin, however, admitted that his opinion was that Stangel was not suffering from a mental disease, disorder or defect at any time *prior* to any voluntary substance abuse. *Id.* at PageID.656. That is, his opinion was that "any mental disease, disorder or defect that the defendant has suffered from in his life was due to substance abuse." *Id.* Given that testimony, the trial court refused to reconsider its decision excluding Dr. Acklin's testimony. The trial court again relied primarily on *Young*'s reasoning regarding HRS § 704-230, ruling in full as follows:

> . . . . I'm not going to reconsider my opinion. And I just said why. The doctor is unequivocal and clear, that any mental disease this young man may have suffered, at any time in his life, including the night in question, was due ultimately to voluntary substance abuse on his part.
>
> Given that, if I allow the doctor to testify, I would also have to specifically instruct the jury to disregard his testimony, essentially. I would have to instruct them something to the effect of, a mental disease, disorder or defect, caused by voluntary substance abuse, cannot be an evidentiary basis for the affirmative defense of penal irresponsibility.

I'm sure that the State would ask for such an
instruction, based squarely on *Monte Young* and other
cases.  And I would, in my view, have to give it.  That is
the law in this jurisdiction.  No if's, and's, or but's.  And
it would, in one fell swoop, completely confuse and
mislead the jury, if prior to that they'd heard Dr. Acklin's
testimony, opining exactly to that effect.

As to pathological intoxication, I don't think—at
very least, the doctor would have to know exactly what
amounts, of specifically what drugs, Mr. Stangel had
taken that night.  That's a predicate to whether the
reaction would be grossly excessive in degree, et cetera.
And Dr. Acklin, quite frankly and candidly, said he
doesn't know.  And so the—some of the essential
predicates for an opinion on pathological intoxication are
missing.

So my ruling stands.  I'm precluding the defense
from calling Dr. Acklin as an expert witness in this case.
I find that any testimony he would have would be, given
the law of this jurisdiction, simply irrelevant.  And
certainly would be totally confusing and misleading to
the jury.

*Id.* at PageID.667−68.

> b.   *Review of the Exclusion of Dr. Acklin's Testimony on Direct
>       Appeal*

On direct appeal, the ICA likewise upheld the exclusion of Dr.

Acklin's testimony based on *Young*.  After reviewing some of Dr. Acklin's

proposed testimony, the ICA reasoned that "self induced intoxication is not a

defense to any offense, unless specifically provided for in HRS § 702-230. . . .  A

[voluntary] drug-induced or exacerbated mental illness does not constitute a

defense."  ECF No. 10-7 at PageID.256 (*Stangel I*, 2015 WL 836928, at *7) (citing

*Young*, 93 Haw. at 232, 999 P.2d at 238). The ICA likewise found no error in excluding Dr. Acklin's testimony regarding pathological intoxication, and further reasoned that "[e]ven assuming this testimony had some probative value, the Circuit Court did not abuse its discretion . . . when it excluded Dr. Acklin's testimony because this probative value would be substantially outweighed by the confusion of the issues it would cause." *Id.* at PageID.257 (*Stangel I*, 2015 WL 836928, at *8).

After the ICA affirmed Stangel's conviction in all respects, but remanded for re-sentencing, the Hawaii Supreme Court denied Stangel's petition for writ of certiorari on July 9, 2015. ECF No. 10-10. After the trial court re-sentenced Stangel on March 23, 2016, ECF No. 10-11, judgment became final after the time for further appeal had passed. *See* HRPP 40(a)(1).

> c.    *The Hawaii Supreme Court Issues* Abion *While Stangel's Rule 40 Petition is Pending on Appeal with the ICA*

Stangel filed his pro se post-conviction Rule 40 Petition in the First Circuit Court on November 29, 2016, ECF No. 10-12, and it was denied on December 29, 2017, ECF No. 10-14. As summarized earlier, Stangel appealed the First Circuit Court's denial of the Petition on January 24, 2018, and the ICA affirmed on May 6, 2021. *See* ECF No. 10-18. Meanwhile, some five months before the ICA affirmed, the Hawaii Supreme Court issued its opinion in *Abion* on December 29, 2020.

In *Abion*, the trial court excluded the testimony of an expert regarding intoxication in support of an insanity defense under HRS § 704-400(1) based on *Young*—the opinion the First Circuit Court relied upon in excluding Dr. Acklin and that the ICA cited in rejecting Stangel's challenge to that exclusion on direct appeal.  But *Abion* vacated and remanded.  148 Haw. at 448, 478 P.3d at 273.  It distinguished or clarified *Young*'s application of HRS § 702-230(1) to an intoxication defense.  Most important for present purposes, *Abion* held that "the self-induced intoxication exception of HRS § 702-230(1) applies only when a defendant is under the *temporary* influence of voluntarily ingested substances at the time of an act."  148 Haw. at 448, 478 P.3d at 273 (emphasis added).  *Abion* explained that "*Young* did not consider or decide whether HRS § 702-230(1) prohibits a defendant from presenting evidence of a *permanent* mental illness caused by a substance use as relevant to a HRS § 704-400 lack of penal responsibility defense."  *Id.* (emphasis added).  *See also id.* at 455, 478 P.3d at 280 (concluding that "*Young* has been misconstrued and the self-induced intoxication exception of HRS § 702-230(1) applies only when a defendant is temporarily under the influence of a voluntarily ingested substance").  It emphasized the distinction between permanent and temporary impairment:  "[W]hile permanent mental impairment resulting from voluntary intoxication may be a defense,

*temporary* impairment resulting from voluntary intoxication is not." *Id.* at 457, 478 P.3d at 282 (citations omitted).

*Abion* also held that the exclusion of testimony of a proffered expert stating that the defendant "was not under the influence of methamphetamines at the time of the offense, but rather was suffering from its permanent or long-term effects," violated the defendant's constitutional right under the Hawaii Constitution to present a complete defense. *Id.* at 459, 478 P.3d at 284 (internal quotation marks omitted). In particular, the exclusion violated a defendant's right "to present any and all competent evidence in their defense." *Id.* (quoting *State v. Acker*, 133 Haw. 253, 301, 327 P.3d 931, 979 (Haw. 2014) (brackets omitted)). *Abion* also reasoned that the exclusion violated a recently-recognized due process right under the Hawaii Constitution to assert a lack of penal responsibility defense:

> Lack of penal responsibility is not merely a statutory affirmative defense; it reflects a precept that is fundamental to due process under the Hawaiʻi Constitution: "A defendant who, due to mental illness, lacks sufficient mental capacity to be held morally responsible for his actions cannot be found guilty of a crime." *Kahler v. Kansas*, 140 S. Ct. 1021, 1039 (2020) (Breyer, J., dissenting).

*Id.* at 458, 478 P.3d at 283 (quoting *State v. Glenn*, 148 Haw. 112, 116, 468 P.3d 126, 130 (2020)).[18]

    d.    *The Potential Effect of* Abion

        Although the Hawaii Supreme Court issued *Abion* while Stangel's appeal of the denial of his Rule 40 Petition was still pending before the ICA, the ICA did not mention, much less address, *Abion* in its memorandum opinion affirming the denial of Stangel's Rule 40 Petition.  The ICA did not analyze whether any of Dr. Acklin's excluded opinions would be admissible given *Abion*.  Nor did it address whether *Abion* pronounced a new rule that can or should be applied retroactively on collateral review.  That lack of discussion of *Abion* is not surprising given that HRPP Rule 40(a)(3) precluded habeas review of the exclusion of Dr. Acklin's testimony, where the ICA had addressed the exclusion on direct appeal some five years earlier, and where Stangel's conviction and sentence became final in 2016.

        And so, those *Abion*-related questions were not exhausted in Hawaii's courts.  The lack of exhaustion could allow this court to stay this § 2254 Petition to

---

[18]  *Glenn* cited or relied upon Justice Stephen Breyer's *dissent* in *Kahler*.  As will become significant later in this Order, the actual opinion in *Kahler* held as to the U.S. Constitution the opposite of what *Glenn* held as to the Hawaii Constitution—that is, *Kahler* reiterated that there is no fundamental due process right under the U.S. Constitution to present any particular formulation of legal insanity.  *See* 140 S. Ct. at 1029 (reiterating that "due process imposes no single canonical formulation of legal insanity") (quoting *Clark v. Arizona*, 548 U.S. 735, 753 (2006).

allow Stangel to attempt to exhaust the issues in state court.  *See Dixon*, 847 F.3d at 719 (citing *Rhines*, 544 U.S. at 278).[19]  Exhaustion could allow Hawaii courts to address whether *Abion* applies to cases pending on collateral review in state court and, if so, whether the trial court erred in excluding some of Dr. Acklin's opinions. *See State v. Garcia*, 96 Haw. 200, 211, 29 P.3d 919, 930 (2001) ("[The Hawaii Supreme Court] adhere[s] to the view that '[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions.'") (quoting *Am. Trucking Ass'ns., Inc. v. Smith*, 496 U.S. 167, 177 (1990)).  Reviewing the trial court's reasoning from 2013, the trial court appears to have explicitly based its exclusion of Dr. Acklin, at least in part, on a view that *any* voluntary intoxication in this case precluded a § 704-400 defense—a view that now appears at odds with *Abion*.  *See* ECF No. 10-23 at PageID.667.

  e.  *Application of § 2254(d)*

    The court, however, need not decide whether to seek further input from Hawaii's courts (and need not decide whether Stangel would be excused from exhaustion under § 2254(b)(1)(B) or, if analyzed as a procedural default, whether Stangel could demonstrate cause and prejudice).  This is because the court is

---

[19]  This habeas court would be precluded from making that determination on its own through an evidentiary hearing in federal court.  *See, e.g.*, *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022) (reiterating that, absent "extraordinary cases, [28 U.S.C. § 2254(e)(2)(A)] bars evidentiary hearing in federal habeas proceedings initiated by state prisoners") (quotation marks and citation omitted).

reviewing the state court's decisions under the "highly deferential" and exacting standards set forth in 28 U.S.C. § 2254(d).  *See, e.g., Moses*, 555 F.3d at 746. "The question under [§ 2254(d)] is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet.'" *Shoop*, 142 S. Ct. at 2043) (quoting *Schriro*, 550 U.S. at 473).

Given this standard, Stangel's Petition would still fail even if this court thought (or Hawaii's courts found) that at least some of Dr. Acklin's opinions would be admissible if *Abion* applies.  Such an error would be a state court violation of state law.  But, as analyzed to follow, the exclusion of this testimony would not be "contrary to" or involve "an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Nor would it result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).[20]

Stangel claims that the exclusion of Dr. Acklin's testimony implicates a federal constitutional due process right to present relevant evidence and to call witnesses in his own defense.  *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986)

---

[20]  In this instance, only if § 2254(d)'s standards were met, would it be necessary to ask the Hawaii courts to review the factual issue further.

("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984) (internal citations omitted)); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right[] to . . . call witnesses in one's own behalf ha[s] long been recognized as essential to due process.").

Courts have characterized in two ways the issue of whether exclusion of relevant evidence violates a federal Constitutional right to defend oneself—either (1) as an exclusion based on the definitions of the elements of a crime or affirmative defense, or (2) viewed simply as akin to an evidentiary rule excluding otherwise relevant evidence.  *See Montana v. Egelhoff*, 518 U.S. 37, 57 (1996) (Ginsburg, J., concurring) (acknowledging the position that "[i]f [a Montana statute regarding voluntary intoxication] is simply a rule designed to keep out 'relevant, exculpatory evidence,' [it] offends due process [but] [i]f it is, instead, a redefinition of the mental-state elements of the offense, on the other hand, . . . [a] due process concern 'would not be at issue,'" but agreeing with the latter) (citation omitted). Either way, however, Stangel's *Young/Abion* habeas claim fails under § 2254(d).

1)    No "fundamental" federal law mandates that a defendant be allowed to present evidence of intoxication, much less evidence of permanent mental impairment resulting from voluntary intoxication

Under the first lens, the court views the issue as the exclusion of Dr. Acklin's testimony based on the meaning of a definition of an insanity defense to negate the mental-state element of a crime (as determined by *Young*, and now potentially by *Abion*).  *See State v. Souza*, 72 Haw. 246, 249, 813 P.2d 1384, 1386 (1991) ("The legislature [in § 702-230] was entitled to redefine the mens rea element of crimes and to exclude evidence of voluntary intoxication to negate state of mind.").  *Abion* (and *Young* before it) are the Hawaii Supreme Court's interpretation of a Hawaii statute (HRS § 702-230) that, in turn, concerns the evidence Stangel could present in support of his insanity defense under § 704-400.

In this regard, "States enjoy wide latitude in defining the elements of criminal offenses, particularly when determining 'the extent to which moral culpability should be a prerequisite to conviction of a crime.'"  *Egelhoff*, 518 U.S. at 58 (Ginsberg, J., concurring) (quoting *Powell v. Texas*, 392 U.S. 514, 545 (1968) (Black, J., concurring)) (internal citations omitted).  Likewise,

> the doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man.  This process of adjustment has always been thought to be the province of the States.

*Id.* at 56 (plurality opinion) (quoting *Powell*, 392 U.S. at 535–36).  "[I]n determining what facts must be proved beyond a reasonable doubt[,] the state legislature's definition of the elements of the offense is usually dispositive." *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986), *overruled on other grounds*, *Alleyne v. United States*, 570 U.S. 99 (2013).

And "[u]nder well-settled precedent, a state rule about criminal liability—laying out either the elements of or the defenses to a crime—violates due process only if it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Kahler*, 140 S. Ct. at 1027 (quoting *Leland v. Oregon*, 343 U.S. 790, 798 (1952)).  *See also, e.g.*, *Egelhoff*, 518 U.S. at 43 ("[I]t is normally 'within the power of the State to regulate procedures under which its laws are carried out,' . . . and its decision in this regard [does not violate] the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'") (quoting *Patterson v. New York*, 432 U.S. 197, 201−02 (1997)).

Viewing *Abion* as such—i.e., a redefinition of an affirmative defense to the mens rea element of a crime that is favorable to defendants—its pronouncements as to voluntary intoxication do not implicate a "fundamental principle of justice" such that the state court's exclusion of that type of evidence

violates the federal due process clause.  As the Supreme Court reasoned in its

plurality opinion in *Egelhoff*,

> In sum, not every widespread experiment with a
> procedural rule favorable to criminal defendants
> establishes a fundamental principle of justice.  Although
> the rule allowing a jury to consider evidence of a
> defendant's voluntary intoxication where relevant
> to *mens rea* has gained considerable acceptance, it is of
> too recent vintage, and has not received sufficiently
> uniform and permanent allegiance, to qualify as
> fundamental, especially since it displaces a lengthy
> common-law tradition which remains supported by valid
> justifications today.

518 U.S. at 51.  Stated differently—viewing intoxication and mental illness as a

type of legal insanity thus precluding culpability—the U.S. Supreme Court has

repeatedly held that "'no particular' insanity test serves as 'a baseline for due

process.'"  *Kahler*, 140 S. Ct. at 1029 (quoting *Clark*, 548 U.S. at 753).

The "'doctrine[s] of criminal responsibility' must remain 'the

province of the States,'" *id.* at 1028 (quoting *Powell*, 392 U.S. at 534), and

"[n]owhere has the Court hewed more closely to that view than in addressing the

contours of the insanity defense."  *Id.* (square brackets added).  "Indeed, while

addressing the demand for an alcoholism defense in *Powell*, the Court

pronounced—as something close to self-evident—that '[n]othing could be less

fruitful' than to define a specific 'insanity test in constitutional terms.'"  *Id.*

(quoting *Powell*, 392 U.S. at 536).

Thus, there is no fundamental federal constitutional right to present evidence of intoxication, and no right to present evidence of permanent mental impairment resulting from voluntary intoxication as set forth in *Abion*.  Exclusion of such evidence would not be "contrary to" or involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).[21]

> 2)  No clearly established Supreme Court precedent squarely addresses whether the discretionary exclusion of expert testimony violates a defendant's right to present evidence

Under the second lens, even if application of *Abion* is viewed strictly as an evidentiary ruling, the petition still fails under § 2254(d)(1).  "'A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions,' such as evidentiary and procedural rules." *Moses*, 555 F.3d at 757 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).  "As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Scheffer*, 523 U.S. at 308. "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"

---

[21]  And to be clear, the Petition would clearly fail if measured only against the trial court and ICA's application of *Young*.  If *Abion* does not apply, the trial court's exclusion of Dr. Acklin's testimony was clearly proper, and the exclusion did not violate the standards set forth in § 2254(d)(1) for the same reasons—a lack of clearly established federal law as decided by the U.S. Supreme Court.

*Id.* (citations omitted).  "[T]he proposition that the Due Process Clause guarantees the right to introduce *all* relevant evidence is simply indefensible" because there are "any number of familiar and unquestionably constitutional evidentiary rules [that] also authorize the exclusion of relevant evidence." *Egelhoff*, 518 U.S. at 42 (emphasis added).  "'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71−72 (2003).

In rejecting an argument in a § 2254 context that exclusion of an expert witness violated a constitutional right to present relevant evidence, the Ninth Circuit in *Moses* reasoned that U.S. Supreme Court cases "do not squarely address whether a court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present relevant evidence." 555 F.3d at 758.  "Nor do they clearly establish 'a controlling legal standard' for evaluating discretionary decisions to exclude [expert testimony]." *Id.* at 758−59.

*Moses* based its holding in part on "a series of recent cases [after AEDPA], [where] the Supreme Court has provided additional guidance regarding when its precedent constitutes the 'correct governing legal principle,' for the case before the state court, and thus is 'clearly established federal law' for purposes of § 2254(d)(1)." *Id.* at 751.  "This series of cases tells us that in order to determine

whether a state court failed to apply 'clearly established Federal law, as determined by the Supreme Court' for purposes of § 2254(d)(1), [courts] must distinguish between situations where a legal principle established by a Supreme Court decision clearly extends to a new factual context (as in [*Panetti v. Quarterman*, 551 U.S. 930 (2007)]) and where it does not (as in [*Carey v. Musladin*, 549 U.S. 70 (2006)] and [*Wright v. Van Patten*, 552 U.S. 120 (2008)])." *Id.* at 753.  For

> when a Supreme Court decision does not "squarely address the issue in the case" or establish a legal principle that "clearly extends" to a new context to the extent required by the Supreme Court in these recent decisions, it cannot be said, under AEDPA, there is "clearly established" Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision.

*Id.* at 754 (brackets and citations omitted).  "If the Court's decisions do provide a 'controlling legal standard' that is applicable to the claims raised by a habeas petitioner without 'tailoring or modification' of the standard, the question is then whether the application of that standard was objectively unreasonable. . . ." *Id.* (citations omitted).

Likewise, *Brown v. Horell*, 644 F.3d 969 (9th Cir. 2011), affirmed a denial of a § 2254 petition which argued that the exclusion of expert testimony violated a right to present a complete defense, relying on the lack of a Supreme Court precedent squarely addressing the discretionary exclusion of evidence and the right to present a complete defense. *Id.* at 983.  *See also Quintero v. Long*,

2015 WL 7017004, at *9−10 (E.D. Cal. Nov. 12, 2015) (denying a § 2254 petition that argued that exclusion of expert witness testimony violated a defendant's right to present relevant evidence in his own defense, applying AEDPA's standards, where the Supreme Court has not squarely addressed whether a court's discretionary decision to exclude expert testimony violates a right to present relevant evidence).

       The trial court's decision excluding Dr. Acklin's testimony was, in significant part, an exercise of discretion.  It gave at least some reasons that were independent of voluntary intoxication.  The trial court reasoned that his testimony would be confusing and misleading, ECF No. 10-23 at PageID.668, and the ICA upheld the exclusion based in part on that ground.  *See* ECF No. 10-7 at PageID.257 (*Stangel I*, 2015 WL 836928, at *8) ("Even assuming this testimony had some probative value, the Circuit Court did not abuse its discretion, when it excluded Dr. Acklin's testimony because this probative value would be substantially outweighed by the confusion of the issues it would cause.").  The trial court also excluded Dr. Acklin's opinion regarding pathological intoxication because it determined that: (1) he was not qualified (for lack of a medical degree), ECF No. 10-22 at PageID.620−22; and (2) he did not know the amounts and types of drugs Stangel had taken the night in question, ECF No. 10-23 at PageID.668.

*See also id.* ("[S]ome of the essential predicates for an opinion on pathological intoxication are missing.").

It follows that the trial court's decision to exclude Dr. Acklin's proposed testimony would not be "contrary to" or "involve[] an unreasonable application of" clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Brown*, 644 F.3d at 983 ("Brown, therefore, cannot—as the petitioner in *Moses* could not—show that the state appellate court's ruling was either contrary to or an unreasonable application of clearly established Supreme Court precedent.") (citing *Moses*, 555 F.3d at 758–59).

> 3) *Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003), and *Abion*'s view of a constitutional right, are both distinguishable

In its request for supplemental briefing, this court recognized that the Ninth Circuit in *Alcala* held in a § 2254 context that a state court's exclusion of expert testimony had, under the facts of that case, violated a federal Constitutional due process right to call witnesses in one's defense. *See* ECF No. 13 (directing the parties to address, among other issues, "whether the [ICA] erred, in light of [*Abion*], when it affirmed the exclusion of Dr. Acklin's opinion" and whether such an error "was contrary to the constitutional right to present defense witnesses, *see, e.g., Alcala . . . .*").

51

*Alcala* applied a balancing test to weigh the importance of proffered evidence against a state's interest in exclusion. *See* 334 F.3d at 877 (applying a test from *Miller v. Stagner*, 757 F.2d 988, 994–95 (9th Cir. 1985), *amended on other grounds*, 768 F.2d 1090 (9th Cir. 1985)). After AEDPA, however, that balancing test cannot form the basis of habeas relief because "the *Miller* balancing test is a creation of circuit law, rather than a Supreme Court holding." *Moses*, 555 F.3d at 759. Indeed, *Alcala* specifically recognized that "[b]ecause Alcala filed his federal habeas petition in 1994, [AEDPA] does not apply to his petition." 334 F.3d at 868. For that reason, *Alcala* applied "the standard of review . . . in [a] pre-AEDPA case." *Id.* As another court recognized,

> [a]fter [*Moses*], it is no longer necessary for this Court to employ the five-factor balancing test set forth by the Ninth Circuit in [*Miller*], to evaluate whether a trial court's discretionary determination to exclude evidence violated a defendant's constitutional rights. Rather, this Court must determine whether the state court's ultimate disposition of the claim was contrary to or involved an unreasonable application of Supreme Court precedent.

*Quintana v. Barnes*, 2013 WL 6231604, at *5 (C.D. Cal. Dec. 2, 2013). In short, *Alcala* is inapplicable.

Similarly, *Abion*'s holding that the exclusion of expert testimony implicated a right to present a complete defense is not germane on federal habeas review because that holding was based on violations of the Hawaii Constitution— not clearly established Federal law as determined by the U.S. Supreme Court. *See*

*Abion*, 148 Haw. at 458, 478 P.3d at 283 (reasoning that "[u]nder the Hawai'i Constitution, central to the protections of due process is the right to be accorded a meaningful opportunity to present a complete defense" and "[t]his court has also recently recognized that defendants have a right under the Hawai'i Constitution to assert a lack of penal responsibility defense"—contrary to the holding by the U.S. Supreme Court in *Kahler*, 140 S. Ct. at 1029) (internal editorial marks and citations omitted).  Of course, the Hawaii Supreme Court, "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution," is "free to give broader protection under the Hawai'i Constitution than that given by the federal constitution."  *Glenn*, 148 Haw. at 120, 468 P.3d at 134 (quoting *State v. Viglielmo*, 105 Haw. 197, 210–11, 95 P.3d 952, 965–66 (2004)).[22]  But this also means that violations of the Hawaii Constitution do not necessarily constitute violations of the U.S. Constitution.[23]

---

[22]  If Stangel has any remedy remaining at all, it might be to attempt to file a second Rule 40 Petition in a Hawaii state court raising the questions of *Abion*'s applicability on collateral review, and whether his rights were violated purely under state law.

[23]  *Abion* also reasoned that, besides a state constitutional violation, "[t]he right to present a complete defense is also a federal constitutional right."  148 Haw. at 458, 478 P.3d at 283.  It cited to *Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002), in which the Tenth Circuit found a state court's exclusion of an expert report violated that right.  But *Ellis* relied on a balancing standard found in *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997).  *See Ellis*, 326 F.3d at 1128.  In turn, *Richmond*—similar to the now-inapplicable balancing test in *Alcala* and *Miller* as discussed above—explicitly applied a pre-AEDPA standard of review.  *See Richmond*, 122 F.3d at 870 ("Congress did not intend the new, more discretionary standards as reflected in the amended 28 U.S.C. § 2254(d) to apply to petitions filed prior to [AEDPA's] effective date;

(continued . . . )

4)　　No unreasonable determination of facts under
§ 2254(d)(2)

Finally, the trial court's decision did not result in "a decision that was

based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Under

§ 2254(d)(2), [reviewing courts] may not characterize a state court's factual

determinations as unreasonable 'merely because [the court] would have reached a

different conclusion in the first instance.'"  *Pizzuto v. Yordy*, 947 F.3d 510, 530

(9th Cir. 2019) (quoting *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015)).

"Instead, § 2254(d)(2) requires that [reviewing courts] accord the state trial court

substantial deference."  *Brumfield*, 576 U.S. at 314.  "If '[r]easonable minds

reviewing the record might disagree about the finding in question, on habeas

review that does not suffice to supersede the trial court's . . . determination.'"  *Id.*

(quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotation marks

omitted)).

---

consequently, we apply the pre-amended version of 28 U.S.C. § 2254 to Mr. Richmond's petition.") (citation omitted).

　　Moreover, to the extent *Ellis* was applying AEDPA's standards, it was also issued "before the Supreme Court provided further clarification of the bounds of an appellate court's AEDPA analysis."  *Moses*, 555 F.3d at 760.  That is, *Ellis* originated before the Supreme Court "clarified that in the absence of a Supreme Court decision that 'squarely addresses' the issue in the case before the state court," or "establishes an applicable general principle that 'clearly extends' to the case," a federal habeas court "cannot conclude that a state court's adjudication of that issue resulted in a decision contrary to, or an unreasonable application of, clearly established Supreme Court precedent."  *Moses*, 555 F.3d at 760 (citations omitted).

　　For those reasons, *Abion*'s citation to *Ellis* is not persuasive here.

Given those standards, this section does not apply because any factual findings the trial court made in conjunction with its exclusion of Dr. Acklin's testimony were not unreasonable in light of the evidence presented. Moreover, § 2254(d)(2) "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law." *Wilson*, 562 U.S. at 6. As analyzed above, Stangel's "claim [under § 2254(d)(2)] fails because he cannot demonstrate his [federal] constitutional rights were violated." *Poyson v. Ryan*, 879 F.3d 875, 893 (9th Cir. 2018). "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson*, 562 U.S. at 5.

## C.    Improperly Treating No Contest Plea as Prior Conviction

Lastly, Stangel claims that his "right to Due Process, as guaranteed by the . . . 5th and 14th Amendments," was violated when the trial court imposed "consecutive sentences based on the faulty reasoning that [his] earlier 'deferred acceptance of a no contest plea' was a conviction." ECF No. 1 at PageID.8. Stangel asserts that the trial court's "faulty reasoning" directly contravened HRS § 853-1(d), amounting to a violation of due process.[24] *Id.*

---

[24] Section 853-1 provides exceptions from legal penalties for certain criminal defendants who "voluntarily plead[] guilty or nolo contendere, prior to commencement of trial." HRS § 853-1(a)(1). If a "proper motion" is made, and the trial court makes certain factual findings— that the defendant is "not likely again to engage in a criminal course of conduct" and that the "ends of justice and the welfare of society do not require [penalty]"—the trial court may "defer

(continued . . . )

Construing that claim as being made against the initial sentencing—as the First Circuit Court did when adjudicating Stangel's Rule 40 Petition, *see* ECF No. 10-14 at PageID.433—that claim is moot because Stangel previously raised that claim to the ICA on direct appeal, and the ICA agreed with Stangel's point of error and, accordingly, vacated the initial sentence and remanded for resentencing.

And construing that claim as being made against the resentencing—as the ICA did when adjudicating Stangel's Rule 40 Petition, *see* ECF No. 10-18 at PageID.542–43 (*Stangel II*, 2021 WL 1819821, at *5)—that claim is procedurally barred because Stangel has waived that claim under HRPP 40(a)(3) by not directly appealing the resentencing.[25]  *See* HRPP 40(a)(3) ("[A]n issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised . . . on appeal . . . .").  And even assuming the claim was not waived, the court rejects it on its merits because Stangel provides no evidence or substantive argument demonstrating that the resentencing trial court even considered Stangel's

---

the proceedings for a period of time," "without accepting the plea of nolo contendere or entering a judgment of guilt." *Id.* § 853-1(a)–(b).  And "[u]pon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant." *Id.* § 853-1(c).  Significantly, "[d]ischarge of the defendant and dismissal of the charge against the defendant . . . shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is *not a conviction*." *Id.* § 853-1(d) (emphasis added).

[25]  Stangel has not demonstrated sufficient cause for the procedural default, nor that there will be a fundamental miscarriage of justice if the court does not reach the merits of his improper-resentencing claim.

"deferred acceptance of a no contest plea" when imposing consecutive terms of life imprisonment.  *See* ECF Nos. 1, 11.

The court thus rejects Stangel's habeas claim that he was deprived of his Fourteenth Amendment right to due process when being sentenced.

## V.  CERTIFICATE OF APPEALABILITY

The court next addresses whether Stangel should be granted a certificate of appealability ("COA").  *See* R. 11(a) of the Section 2254 Rules (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" (citing 28 U.S.C. § 2253(c)).  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a constitutional claim is rejected on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find debatable or wrong any of the denials in this Order, with the exception of the denial of Stangel's claim regarding the exclusion of Dr. Acklin's testimony, given the Hawaii Supreme Court's 2020 opinion in *Abion*.  For that claim, Stangel argued that the trial court violated his due process rights when it precluded Dr. Acklin from testifying at trial as to his defense of a lack of penal responsibility.  The court recognizes that there are some

statements of Dr. Acklin that could be deemed relevant under state law—again, if *Abion* applies to cases on collateral review in state court.

This court has concluded that, even if there were a violation of state law, the habeas claim fails because there is no clearly established federal constitutional right as determined by the U.S. Supreme Court to present evidence of a voluntary intoxication insanity defense, *see Kahler*, 140 S. Ct. at 1029; and because there is no such clearly established federal law addressing whether a discretionary exclusion of expert testimony implicates Stangel's right to call witnesses on his behalf, *see, e.g.*, *Moses*, 555 F.3d at 754.

Although the court is confident in its analysis set forth in this Order, these questions are complex.  The analysis requires a thorough review of constitutional principles, and an application of an apparent change in Hawaii law that affects the introduction of evidence regarding a lack of penal responsibility. For example, reasonable jurists might conceivably find the court's conclusion debatable that the trial court actually exercised its discretion in excluding Dr. Acklin's testimony (rather than excluding the testimony only because it was completely irrelevant under the trial court's view at that time of the scope of *Young*).  A reasonable jurist might possibly question whether the exclusion was "arbitrary" or "disproportionate to the purposes" of exclusion.  *Scheffer*, 523 U.S.

at 308.  The court thus issues a certificate of appealability as to the trial court's exclusion of Dr. Acklin's testimony.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, Petitioner Toby Stangel's Petition under 28 U.S.C. § 2254 is DENIED.  The court issues a certificate of appealability on the issue regarding exclusion of Dr. Acklin's opinions in light of *State v. Abion*, 148 Haw. 445, 478 P.3d 270 (2020).  The Clerk of Court shall close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 15, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Stangel v. Wead*, Civ. No. 22-00067 JMS-KJM, Order Denying Habeas Petition Under 28 U.S.C. § 2254, ECF No. 1, and Issuing Certificate of Appealability